UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION; ATLANTIC MUSIC GROUP LLC; BAD BOY RECORDS LLC; ELEKTRA ENTERTAINMENT LLC; ELEKTRA ENTERTAINMENT GROUP INC.; FUELED BY RAMEN LLC; WARNER MUSIC INTERNATIONAL SERVICES LIMITED; WARNER RECORDS INC.; WARNER RECORDS LLC; SONY MUSIC ENTERTAINMENT; ARISTA MUSIC; ARISTA RECORDS, LLC; ZOMBA RECORDING LLC; UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; and SPOTIFY USA INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANNA'S ARCHIVE and DOES 1-10, <br><br> Defendants. | No. _____ <br><br> **DECLARATION OF ALASDAIR MCMULLAN IN SUPPORT OF MOTION FOR AN EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> **[FILED UNDER SEAL]** |

I, Alasdair McMullan, declare and state, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.9 of the United States District Courts for the Southern and Eastern Districts of New York, that the following is true and correct:

1. I am Executive Vice President, Business and Legal Affairs, Head of Litigation at Universal Music Group, which is an umbrella designation for a group of related companies that includes plaintiffs UMG Recordings, Inc. and Capitol Records, LLC (together, the "UMG Plaintiffs"). I make this declaration in support of: (1) Plaintiffs Atlantic Recording Corporation, Atlantic Music Group LLC, Bad Boy Records LLC, Elektra Entertainment LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Warner Music International Services

Limited, Warner Records Inc., Warner Records LLC, Sony Music Entertainment, Arista Music, Arista Records, LLC, Zomba Recording LLC, UMG Recordings, Inc., and Capitol Records, LLC's (collectively, the "Record Company Plaintiffs") Application for Order to Temporarily File Case Under Seal, and (2) the Record Company Plaintiffs' Motion for an Emergency *Ex Parte* Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. I have personal knowledge of, and if called as a witness, could testify to the following facts.

2. My responsibilities for Universal Music Group include, among others, supervising litigation and handling litigation-related matters. I am knowledgeable about the copyright registrations and licensing practices of the UMG Plaintiffs, and am also familiar with the UMG Plaintiffs' business relationships.

3. The UMG Plaintiffs are engaged in the creation, distribution, marketing, licensing and sale of sound recordings, and maintain offices in New York, New York. In connection with their businesses, the UMG Plaintiffs are the owners of copyrights or exclusive U.S. rights under copyright to various sound recordings. The UMG Plaintiffs have obtained these rights through a variety of means, including in connection with recording contracts with artists or companies furnishing the services of artists or through other types of agreements, such as exclusive licensing or joint venture agreements with original copyright claimants, or by virtue of being the successors-in-interest to the original copyright claimants.

4. Attached hereto as **Exhibit A** is a spreadsheet listing sound recordings at issue in this action as to which the UMG Plaintiffs, as reflected in Exhibit A, either own the copyrights in the sound recordings, had exclusive U.S. rights under copyright (*e.g.*, the exclusive reproduction, digital transmission, and/or distribution rights) during the time period relevant to this litigation, or are the successors-in-interest to an entity that held such rights; these copyrights are registered

with the U.S. Copyright Office. The sound recordings reflected in Exhibit A are not exhaustive of the recordings that Defendant Anna's Archive ("Defendant") has infringed, but are provided as a representative sample. These recordings appear on a list published on Defendant's blog of 10,000 of the most popular songs, a subset of the 86 million music files that Defendant claims to have "scraped" (*i.e.*, illegally reproduced) from Spotify and that Defendant has stated it intends to publicly release via BitTorrent or other means. These recordings are also included among the sound recordings listed in Exhibit A to the Complaint filed in this action.

5. The UMG Plaintiffs have never authorized Defendant to distribute, perform, or reproduce any of the UMG Plaintiffs' sound recordings, including without limitation those listed in Exhibit A hereto.

6. Defendant's unauthorized "scraping" and threatened viral distribution of the UMG Plaintiffs' copyrighted sound recordings has caused, and will continue to cause, irreparable harm to the UMG Plaintiffs. The UMG Plaintiffs' business model is dependent, in significant part, upon the licensing of their catalog of sound recordings to legitimate streaming services. In addition, the UMG Plaintiffs' artists rely on the UMG Plaintiffs to control the distribution of the UMG Plaintiffs' catalog to protect their rights, including to earn revenue from distribution of the UMG Plaintiffs' works. If consumers can instead download the UMG Plaintiffs' catalog of sound recordings for free and without restriction as a result of Defendant's threatened public release of these music files via BitTorrent or other means, consumers will have little incentive to pay for the legitimate services on which the UMG Plaintiffs and their artists rely.

7. In addition, the UMG Plaintiffs' licensees have been granted rights in the UMG Plaintiffs' works in exchange for licensing fees. These authorized licensees rely on the UMG

Plaintiffs to protect against the unauthorized use of the UMG Plaintiffs' catalogs, in order to protect their own rights to stream those recordings and earn revenue from the UMG Plaintiffs' works without having to compete with entities like Defendant who illegally distribute those recordings for free and without authorization from the UMG Plaintiffs. Defendant's ongoing, illegal conduct will materially limit and interfere with the UMG Plaintiffs' right and ability to control their catalog of sound recordings and the UMG Plaintiffs' ability to charge a fair market rate for their music.

8. Given the enormous magnitude of Defendant's illegal reproduction and threatened mass distribution of the UMG Plaintiffs' sound recordings, the extent of the UMG Plaintiffs' losses arising from Defendant's illegal conduct is extraordinary; however, given the decentralized and uncontrolled nature of Defendant and its conduct, those losses also cannot be calculated with precision. Without the relief requested in this action, Defendant's illegal conduct will continue unabated and the UMG Plaintiffs will continue to suffer irreparable harm that no future damages award can mitigate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 28, 2025, at Los Angeles, California.

*/s/ Alasdair McMullan*

Alasdair McMullan