**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION; ATLANTIC MUSIC GROUP LLC; BAD BOY RECORDS LLC; ELEKTRA ENTERTAINMENT LLC; ELEKTRA ENTERTAINMENT GROUP INC.; FUELED BY RAMEN LLC; WARNER MUSIC INTERNATIONAL SERVICES LIMITED; WARNER RECORDS INC.; WARNER RECORDS LLC; SONY MUSIC ENTERTAINMENT; ARISTA MUSIC; ARISTA RECORDS, LLC; ZOMBA RECORDING LLC; UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; and SPOTIFY USA INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANNA'S ARCHIVE and DOES 1-10, <br><br> Defendants. | No. 26-cv-00002 (JSR) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

    **A**    Defendant Illegally "Scrape[s]" and "Back[s]" Up Millions of Spotify Files .........2

    **B**    Plaintiffs Initiate This Action, and Seek and Obtain Preliminary Injunctive
        Relief .................................................................................................................................5

    **C**    Defendant Releases Spotify Music Files in Violation of the Preliminary
        Injunction .........................................................................................................................7

ARGUMENT .................................................................................................................................. 8

I.    THE COURT SHOULD ENTER DEFAULT JUDGMENT ............................................. 8

    **A**    Step 1: The Clerk Has Entered Defendant's Default ...............................................9

    **B**    Step 2: Default Judgment Is Warranted and Plaintiffs Have Established Liability .9

        1.    Default Judgment Is Warranted ................................................................10

        2.    Plaintiffs' Allegations Establish Defendant's Liability ............................11

II.    THE COURT SHOULD AWARD MAXIMUM STATUTORY DAMAGES ................ 15

    **A**    Maximum Statutory Damages for Copyright Infringement Are Appropriate .......16

    **B**    Maximum Statutory Damages for Violations of the DMCA Are Appropriate .....20

III.    THE COURT SHOULD ENTER A PERMANENT INJUNCTION .............................. 23

CONCLUSION ............................................................................................................................ 25

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................9, 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................9, 11

*Bose BV v. Zavala*,
    No. CIV.A. 09-11360-GAO, 2010 WL 152072 (D. Mass. Jan. 14, 2010) ..............................21

*Broad. Music, Inc. v. Buffalo Wing Joint & Pub, LLC*,
    431 F. Supp. 3d 147 (W.D.N.Y. 2019) .................................................................................11

*Cengage Learning Inc. v. Doe 1*,
    Case No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) ..............................10

*Cengage Learning, Inc. v. Nguyen*,
    No. 1:20-CV-00769 (JGK), 2022 WL 18231654 (S.D.N.Y. Nov. 21, 2022).................. *passim*

*CKR Law LLP v. Anderson Invs. Int'l, LLC*,
    544 F. Supp. 3d 474 (S.D.N.Y. 2021) (Rakoff, J.) ..........................................................8, 9, 11

*Comcast of Illinois X, LLC. v. Hightech Elecs., Inc.*,
    No. 03 C 3231, 2004 WL 1718522 (N.D. Ill. July 29, 2004) ...................................................21

*DISH Network, L.L.C. v. Magembe*,
    No. 4:23-CV-01136-P, 2024 WL 4406948 (N.D. Tex. Apr. 26, 2024)...................................15

*Disney Enters., Inc. v. VidAngel*, Inc.,
    869 F.3d 848 (9th Cir. 2017)  .................................................................................................15

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)................................................................................................................23

*G&G Closed Cir. Events, LLC v. Jimenez*,
    No. 20-CIV-7489 (PAE), 2021 WL 11586165 (S.D.N.Y. Nov. 12, 2021) .............................11

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
    826 F. Supp. 2d 619 (S.D.N.Y. 2011).............................................................................18, 20

*Hudson Furniture, Inc. v. Mizrahi.*,
    *No.* 1:20 Civ. 04891 (PAC), 2023 WL 6214908 (S.D.N.Y. Sept. 25, 2023).........................16

*Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*,
   No. 07 Civ. 6865 (LTS), 2007 WL 4468652 (S.D.N.Y. Dec. 20, 2007) ............................9, 10

*Mason Tenders Dist. Council v. Duce Constr. Corp.*,
   No. 02 Civ. 9044 (LTS), 2003 WL 1960584 (S.D.N.Y. Apr. 25, 2003) ...............................10

*McCurry v. Accessory Network Group, LLC*,
   No. 1:15-CV-09779, Dkt. Nos. 35 and 36 (S.D.N.Y. 2019) ...................................................20

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)......................................................................................................13

*Pearson Educ., Inc. v. Najji*,
   No. 21-CV-3486 (RA), 2024 WL 4350467 (S.D.N.Y. Feb. 13, 2024) ..................................20

*Philip Moris USA Inc. v. A & V Minimarket, Inc.*,
   592 F. Supp 2d 669 (S.D.N.Y. 2009)......................................................................................18

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
   No. 11-CV-726 CBA, 2012 WL 3306600 (E.D.N.Y. June 13, 2012)....................................22

*RealNetworks, Inc. v. Streambox, Inc.*,
   No. 2:99CV2070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000).........................................22

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ................................................................................................10

*Rovio Ent., Ltd. v. Allstar Vending, Inc.*,
   97 F. Supp. 3d 536 (S.D.N.Y. 2015).......................................................................................16

*Sheldon v. Plot Com.*,
   No. 15-CV-5885 (CBA), 2016 WL 5107072 (E.D.N.Y. Aug. 26, 2016)...............................21

*Sony Computer Ent. Am., Inc. v. Filipiak*,
   406 F. Supp. 2d 1068 (N.D. Cal. 2005) ..................................................................................21

*TracFone Wireless, Inc. v. SND Cellular, Inc.*,
   715 F. Supp. 2d 1246 (S.D. Fla. 2010) ...................................................................................21

*UMG Recordings, Inc. v. Escape Media Grp., Inc.*,
   No. 11 CIV. 8407, 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014).........................................12

*United States v. Myers*,
   236 F. Supp. 3d 702 (E.D.N.Y. 2017) .....................................................................................10

*Universal City Studios, Inc. v. Reimerdes*,
   111 F. Supp. 2d 294 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios,*
   *Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001)...........................................................................15

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,
    373 F.3d 241 (2d Cir. 2004)..................................................................................................11

*Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*,
    147 F.4th 73 (2d Cir. 2025) ..................................................................................................13

*Winegard v. Crain Commc'ns, Inc.*,
    No. 20-CV-01509 (AJN), 2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021) .................................9

*WPIX, Inc. v. ivi, Inc.*,
    765 F. Supp. 2d 594 (S.D.N.Y. 2011).....................................................................................24

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012)..................................................................................................24

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)..................................................................................................12

**Statutes**

17 U.S.C. § 106...........................................................................................................................12

17 U.S.C. § 412...........................................................................................................................16

17 U.S.C. § 502(a) ......................................................................................................................23

17 U.S.C. § 504(c) ......................................................................................................................16

17 U.S.C. § 1201(a) .......................................................................................................5, 14, 15, 20

17 U.S.C. § 1203(b) ....................................................................................................................23

17 U.S.C. § 1203(c) ...............................................................................................................15, 20

18 U.S.C. § 1030.....................................................................................................................5, 11

28 U.S.C. § 1651.........................................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 4............................................................................................................................9

Fed. R. Civ. P. 12..........................................................................................................................9

Fed. R. Civ. P. 55...................................................................................................................1, 8, 9

Fed. R. Civ. P. 65...................................................................................................................1, 8, 9

Local Civil Rule 55.2....................................................................................................................1

Pursuant to Rule 55 of the Federal Rules of Civil Procedure and Local Civil Rule 55.2, Plaintiffs Atlantic Recording Corporation, Atlantic Music Group LLC, Bad Boy Records LLC, Elektra Entertainment Group Inc., Elektra Entertainment LLC, Fueled by Ramen LLC, Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, Sony Music Entertainment, Arista Music, Arista Records, LLC, Zomba Recording LLC, UMG Recordings, Inc., Capitol Records, LLC (collectively, "the Record Company Plaintiffs"), and Spotify USA Inc. ("Spotify", and together with the Record Company Plaintiffs, "Plaintiffs"), by and through their undersigned counsel of record, submit this memorandum of law in support of their Motion for Default Judgment.

## PRELIMINARY STATEMENT

Defendant Anna's Archive ("Defendant")—an organization notorious for its admittedly illegal conduct—intentionally violates copyright law by stealing and reproducing protected content and then distributing it to the public. This case centers on Defendant's latest act of piracy: the brazen theft of millions of music and other files from Spotify, including many copyrighted sound recordings owned or controlled by the Record Company Plaintiffs. In December 2025, Defendant boasted that it had "scrap[ed]" (*i.e.*, accessed and reproduced) and "back[ed] up" (*i.e.*, decrypted and stored) 86 million Spotify music files and 256 million related metadata files without authorization; at that same time, Defendant released the bulk of the metadata files to the public and announced its intention to mass distribute the remaining files (including the music files) in future "stages."

Plaintiffs promptly initiated this action in an effort to protect their rights. They sought and obtained a temporary restraining order and preliminary injunction expressly restraining Defendant from, among other things, making the stolen music files owned or controlled by the Record Company Plaintiffs available for download. Despite this Court's orders, Defendant carried out its

threat to commence mass distribution of the Spotify music files. On or around February 9, 2026, Defendant released "torrents" listing nearly three million music files and associated metadata that Defendant had made available for download through the BitTorrent network (including sound recordings owned or controlled by one or more of the Record Company Plaintiffs), thereby confirming Defendant's circumvention of Spotify's technological measures intended to protect those works. Defendant's contempt of the Court's preliminary injunction order is flagrant and indisputable.

Defendant's disregard of this Court's authority is not limited to its noncompliance with the preliminary injunction. Notwithstanding having been duly served with the summons and Complaint, the temporary restraining order, and the preliminary injunction, Defendant never timely answered or otherwise responded to the Complaint, and has never appeared or defended itself in this action. As a result, Plaintiffs obtained entry of Defendant's default by the Clerk.

Plaintiffs now seek entry of a default judgment for Defendant's failure to respond to the Complaint or defend this action. Defendant's blatant and willful disregard for Plaintiffs' rights and the Court's authority warrants imposition of statutory damages against Defendant for copyright infringement in the amount of $22,200,000, and for violation of the Digital Millenium Copyright Act in the amount of $300,000,000, as well as permanent injunctive relief.

## BACKGROUND

### A    Defendant Illegally "Scrape[s]" and "Back[s]" Up Millions of Spotify Files.

Defendant is an online pirate that operates a collection of websites ("Defendant's Websites") that host or direct users to copyrighted content, including books, movies, and music, without authorization from or compensation to the copyright owners.[1] ECF No. 8 ¶ 35. In exchange

---

[1] When this action was commenced, Defendant's Websites were accessible through three domains: annas-archive.org, annas-archive.li, and annas-archive.se. ECF No. 8 ¶ 37. Pursuant to this Court's

for its services, Defendant solicits users to "donate" money using untraceable methods such as gift cards or cryptocurrency. *Id.* ¶ 45. But these "donations" are in reality "paid memberships" that buy users increased download speeds to more quickly access illegally obtained copyrighted works. *Id.* Defendant knows its operations are unlawful, having publicly acknowledged that it "deliberately violate[s] the copyright law in most countries." *Id.* ¶ 38. In light of this reality, Defendant's operators intentionally remain anonymous and take steps to conceal their identities so as to avoid the "high risk of being arrested" and facing "decades of prison time." *Id.* ¶¶ 21, 36.

On December 20, 2025, Defendant published a blog post boasting that it had illegally "scraped" (*i.e.*, accessed and reproduced) and "backed up" (*i.e.*, decrypted and stored) 86 million music files and 256 million metadata files (*e.g.*, recording artist, track name, album name, cover art) from Spotify—one of the world's most popular audio streaming services, featuring sound recordings licensed from copyright owners, including the Record Company Plaintiffs. *Id.* ¶¶ 1, 46, 48, 62, 63 & Ex. D. In that same post, Defendant announced that it had already publicly released the bulk of the metadata it had stolen and stated its intention to mass distribute the music files to the public "in torrents" (*i.e.*, via BitTorrent, a pernicious peer-to-peer sharing platform) "in order of popularity," publishing a list of what it described as the 10,000 most popular sound recordings on Spotify. *Id.* ¶¶ 41-43 & Ex. D. Defendant further stated that it intended to "add downloading of individual [audio] files," thereby enabling anyone with an internet connection and enough storage space to search for and download any sound recording. *Id.* ¶ 67 & Ex. D.

To accomplish this enormous act of infringement and breach, Defendant unlawfully used

---

January 2, 2026, Temporary Restraining Order, Public Interest Registry disabled access to annas-archive.org, and Cloudflare disabled access to annas-archive.li and annas-archive.se. *See* ECF No. 27 ¶ 3. Shortly thereafter, however, Defendant retained a different internet service provider to restore access to the ".se" and ".li" domains. *Id.* ¶ 5. Moreover, Defendant activated additional "mirror" websites to host the infringed content. *Id.*

functionality in a Spotify application programming interface ("API") to engage in a coordinated, automated, and unauthorized scrape of millions of Spotify's music and metadata files over the course of several months. *Id.* ¶¶ 60-61. Defendant first used thousands of Spotify accounts to mask its usage as ordinary; it then circumvented the digital rights management ("DRM") technology that Spotify uses to protect audio files so that the files could be reproduced, distributed, and played outside of the Spotify platform. *Id.* ¶¶ 4, 54, 60-62, 97; Declaration of Richard Titmuss ("Titmuss Decl.") ¶¶ 4-7. Spotify expressly prohibits these types of actions in its Terms and Conditions of Use and User Guidelines (the "Spotify Terms"), to which Defendant and its agents necessarily agreed when creating the Spotify accounts it used to perpetrate this theft. ECF No. 8 ¶¶ 52-57 & Exs. B, C. Specifically, the Spotify Terms prohibit (a) the unauthorized "copying, reproducing, redistributing, 'ripping,' [and] transferring" of audio files from Spotify; (b) the unauthorized "importing" and "copying" of local audio files from Spotify; (c) "transferring" copies of cached content onto unauthorized devices; (d) "crawling" or "scraping" Spotify; and (e) "circumventing" Spotify's technological measures. *Id.* ¶ 56 & Ex. C ¶¶ 2-5, 9.

Among the illegally scraped files were sound recordings owned or controlled by the Record Company Plaintiffs that are registered with U.S. Copyright Office and that were available on Spotify at the time of Defendant's infringement. *Id.* ¶¶ 24-26, 65; *see also* ECF No. 12 ¶ 4; ECF No. 13 ¶ 4; ECF No. 14 ¶ 4. An illustrative sample of 148 of the Record Company Plaintiffs' works infringed by Defendant are identified in Exhibit A to the Complaint (the "Copyrighted Sound Recordings"). ECF No. 8 ¶ 24 & Ex. A; *see also* ECF No. 12 ¶¶ 4-5 & Ex. A; ECF No. 13 ¶¶ 4-5 & Ex. A; ECF No. 14 ¶¶ 4-5 & Ex. A.

4

**B**     **Plaintiffs Initiate This Action, and Seek and Obtain Preliminary Injunctive Relief.**

After discovering Defendant's blog post and illegal actions, Plaintiffs commenced this action against Defendant on January 2, 2026. ECF No. 2. The Record Company Plaintiffs brought claims for direct copyright infringement and violation of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201, for damages, injunctive, and other relief, ECF No. 8 ¶¶ 69-77, 94-100 & Prayer for Relief, and concurrently moved for an Emergency *Ex Parte* Temporary Restraining Order and an Order to Show Cause re: Preliminary Injunction (the "TRO Motion"), ECF No. 19. Spotify also asserted a claim against Defendant for violation of the DMCA, as well as claims for breach of contract and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). ECF No. 8 ¶¶ 78-100 & Prayer for Relief.

On January 2, 2026, the Court granted the TRO Motion and issued a Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction (the "TRO Order"), finding that emergency relief was warranted due to Defendant's ongoing infringement and stated intent to imminently mass release and distribute the Copyrighted Sound Recordings and other music files to the public. *See* ECF No. 19. In relevant part, the TRO Order prohibited Defendant from:

(a)     Hosting, linking to, distributing, reproducing, copying, uploading, making available for download, indexing, displaying, exhibiting, publicly performing, communicating to the public, streaming, transmitting, or otherwise exploiting or making any use of any copyrighted work owned or controlled by any of the Record Company Plaintiffs, including without limitation the Copyrighted Sound Recordings, or any portion(s) thereof in any form; [and]

(b)     Taking any action that directly or indirectly enables, facilitates, permits, assists, solicits, encourages or induces any user or other third party (i) to copy, host, index, reproduce, download, stream, exhibit, distribute, communicate to the public, upload, link to, transmit, publicly perform, display or otherwise use or exploit in any manner any copyrighted work owned or controlled by any of the Record Company Plaintiffs, including without limitation the Copyrighted Sound Recordings, or any portion(s) thereof in any form; or (ii) to make available any copyrighted work owned or controlled by any of the Record Company Plaintiffs, including the Copyrighted Sound Recordings, or any portion(s) thereof in any form,

5

for copying, hosting, indexing, reproducing, downloading, streaming, exhibiting, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing or displaying, or for any other use or means of exploitation, including via BitTorrent;

*Id.* at 5-6.

In the TRO Order, the Court also granted leave "to serve Anna's Archive by email [because] traditional service methods would be futile," and "[g]iven that Anna's Archive operated anonymously," "email service is most likely to give Anna's Archive notice." *Id.* ¶ 6. The Court further noted that the Hague Convention was inapplicable.[2] *Id.* at 4-5. The Court also set a briefing schedule and hearing for the Order to Show Cause re: Preliminary Injunction. *Id.* at 8-9. On January 3, 2026, and pursuant to the TRO Order, Plaintiffs' counsel served the Complaint and TRO Order and all other documents that had been filed in the action on Defendant via Defendant's listed email addresses. *See* ECF Nos. 20-21.

Defendant did not file any response to the TRO Motion by January 12, 2026, the deadline set forth in the TRO Order, or any time thereafter. On January 14, 2026, the Record Company Plaintiffs filed a reply in support of the TRO Motion. ECF No. 26. That same day, Plaintiffs' counsel of record served Defendant with the Record Company Plaintiffs' reply papers and proposed preliminary injunction, again via email pursuant to the TRO Order. *See* ECF. No. 29.

On January 16, 2026, the Court held a hearing on the Order to Show Cause re: Preliminary Injunction. Defendant did not appear at the hearing. Shortly thereafter, on January 20, 2026, the Court entered a preliminary injunction consistent with the restraints set forth in the TRO Order

---

[2] The Hague Convention rules governing service do not apply because the only physical address associated with Defendant's Websites that Plaintiffs could identify is in Liberia, which is not a party to the Hague Convention. *See* ECF No. 15 ¶¶ 18, 27.

(the "Preliminary Injunction"). *See* ECF No. 17. The Preliminary Injunction enjoined Defendant from the same conduct prohibited by the TRO Order as described above. *Id.* at 5.

Defendant's deadline to answer or otherwise respond to the Complaint was January 26, 2026. Defendant did not file an answer or other response by that date or thereafter. ECF No. 31 ¶¶ 2-6. As of the date of this Motion, Defendant has not appeared or participated in this action in any way. Declaration of Rollin A. Ransom ("Ransom Decl.") ¶ 2. Accordingly, on January 29, 2026, Plaintiffs filed a Request for Clerk's Certificate of Default, which the Clerk issued on February 2, 2026. ECF Nos. 30-32.

### C    Defendant Releases Spotify Music Files in Violation of the Preliminary Injunction.

In blatant disregard of the Preliminary Injunction, on or around February 9, 2026, Defendant publicly released a portion of the music files it illegally scraped from Spotify, via 47 separate torrents listed on Defendant's Websites. *See* Declaration of Jeremy Landis ("Landis Decl.") ¶ 5. Plaintiffs downloaded the first two torrents and confirmed that each torrent identified and permitted download of 60,000 individual sound recording files scraped from Spotify. *Id.* ¶ 6; Titmuss Decl. ¶ 6. In order to release each one of these 120,000 individual sound recording files, Defendant necessarily circumvented the DRM technology that Spotify used in connection with such file; indeed, it was only by circumventing that DRM technology that Defendant was able to make the files available for download and distribution, and capable of being played outside of the Spotify platform. Titmuss Decl. ¶ 7. Defendant represented, and Plaintiffs are accordingly informed and believe, that 44 of the remaining 45 torrents made available by Defendant likewise each identifies 60,000 sound recordings, and that the final torrent identifies 46,421 sound recordings, for a total of 2,806,421 individual music files. Landis Decl. ¶ 5.

The music files released by Defendant include sound recordings owned by one or more of the Record Company Plaintiffs, as well as multiple sound recordings owned by affiliates of the Record Company Plaintiffs (and identified as such in the metadata accompanying the sound recordings that Defendants included in the download). Landis Decl. ¶¶ 6-7. On or around February 11, 2026, the links to the Spotify torrents were removed from the active versions of Defendant's Websites. Landis Decl. ¶ 8. However, because of the nature of the BitTorrent network through which Defendant released the files, those files remain publicly available through that peer-to-peer network, even if the torrents are no longer directly accessible on Defendant's Websites. ECF No. 15 ¶¶ 4-7.

## ARGUMENT

### I.    THE COURT SHOULD ENTER DEFAULT JUDGMENT.

The Court should enter judgment in Plaintiffs' favor. Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining default judgment against a defendant who fails to answer or otherwise defend the action: entry of default by the Clerk, followed by entry of default judgment by the Court. Fed. R. Civ. P. 55(a), (b)(2); *see also CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 482-83 (S.D.N.Y. 2021) (Rakoff, J.). The first step—entry of default—is a procedural requirement that "'formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.'" *CKR Law LLP*, 544 F. Supp. 3d at 481 (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)). The second step—entry of default judgment—"converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id.* (quotations and citations omitted). As set forth below, the record supports entering default judgment against Defendant.

**A       Step 1: The Clerk Has Entered Defendant's Default.**

A party can default by failing to plead or otherwise participate or defend in the action. Fed. R. Civ. P. 55(a); *see also CKR Law LLP*, 544 F. Supp. 3d at 481. Here, Defendant was duly served with the Summons and Complaint via email on January 3, 2026, pursuant to the TRO Order. ECF No. 21. Defendant's deadline to answer or otherwise respond to the Complaint was January 26, 2026. Fed. R. Civ. P. 12 (a)(1)(A)(i). Defendant did not timely respond, or otherwise appear or participate in this action. Ransom Decl. ¶ 2. Plaintiffs subsequently requested entry of default, and the Clerk entered that default on February 2, 2026. *See* ECF Nos. 30, 31, 32. The first step to obtain a default judgment—entry of default by the Clerk—has thus been completed.

**B       Step 2: Default Judgment Is Warranted and Plaintiffs Have Established Liability.**

When considering whether to enter default judgment, a court first considers "(1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865 (LTS), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (granting motion for default judgment). Once the court has determined that these factors favor the plaintiff, it must then determine whether the plaintiff's well-pleaded allegations in the complaint are sufficient to establish the defendant's liability under the plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See, e.g.*, *CKR Law LLP*, 544 F. Supp. 3d at 482-83; *Winegard v. Crain Commc'ns, Inc.*, No. 20-CV-01509 (AJN), 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021). These standards are met here.

1.    Default Judgment Is Warranted.

The three factors courts consider to determine whether default judgment is warranted all support entry of default judgment.

First, despite having been served,[3] Defendant never responded to the Complaint or otherwise appeared or participated in this action. *See* ECF Nos. 20, 21, 31, 32. Defendant's refusal to participate in this action in any respect is sufficient to demonstrate the willfulness of its default. *See, e.g.*, *Indymac Bank*, 2007 WL 4468652, at *1 (holding that defendants' failure to appear, respond to the complaint, or respond to motion for default judgment indicated willful conduct); *Mason Tenders Dist. Council v. Duce Constr. Corp.,* No. 02 Civ. 9044 (LTS), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (willful default found where defendants failed to respond to the complaint, make an appearance, or provide an excuse for failure to defend).

Second, having failed to answer or otherwise appear, Defendant cannot establish that it has a meritorious defense to Plaintiffs' claims. *See, e.g.*, *United States v. Myers*, 236 F. Supp. 3d 702, 707 (E.D.N.Y. 2017) (defendant's failure to answer "weighs in favor of granting a default judgment"); *G&G Closed Cir. Events, LLC v. Jimenez,* No. 20-CIV-7489 (PAE), 2021 WL 11586165, at *5 (S.D.N.Y. Nov. 12, 2021) (explaining that defendants, "having failed to file an answer, cannot establish a meritorious defense," and finding default judgment warranted).

---

[3] Defendant was served with the Summons and Complaint via email pursuant to the TRO Order authorizing service by email of all documents filed in this action. Service via email was appropriate because: (1) it is not prohibited by international agreement because the only address that Plaintiffs were able to identify for Defendant is in Liberia, which is not a party to the Hague Convention, *see* ECF No. 15 ¶¶ 18, 27; Fed. R. Civ. P. 4(f)(3); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-19 (9th Cir. 2002); and (2) Defendant engages in illicit conduct and conceals its physical address and its operators' identities, *see* ECF No. 8 ¶¶ 21, 35; *Cengage Learning Inc. v. Doe 1*, Case No. 18-cv-403 (RJS), 2018 WL 2244461, at *4 (S.D.N.Y. Jan. 17, 2018) (service by email appropriate where it is unknown "whether Defendants reside in the United States or in a foreign country" and "Defendants appear to have concealed their true identities and contact information").

10

Third, as Defendant has failed to respond notwithstanding Plaintiffs' diligent efforts to prosecute their claims, Plaintiffs would be unfairly prejudiced if denied a default judgment because "there are no additional steps available to secure relief in this Court." *G&G Closed Cir. Events, LLC*, 2021 WL 11586165, at *5; *see also Broad. Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 154 (W.D.N.Y. 2019) (third factor favored default judgment where "ignoring the default would prejudice Plaintiffs in that they have expended time and money in prosecuting this case; they deserve an adjudication").

### 2.    Plaintiffs' Allegations Establish Defendant's Liability.

Because the default judgment factors all favor Plaintiffs, the Court's analysis turns to whether Plaintiffs' well-pleaded allegations, which the Court must accept as true, "establish a 'legal basis' for liability" under the *Twombly* and *Iqbal* pleading standards. *CKR Law LLP*, 544 F. Supp. 3d at 482-83 ("Because the respondents are in default, the Court accepts as true all well-pleaded allegations in the petition."); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (defendant's default is "an admission of all well-pleaded allegations against" it). Plaintiffs have alleged sufficient, plausible facts to establish Defendant's liability as to Plaintiffs' First, Second, and Fourth Claims for Relief.[4]

***Defendant Is Liable for Direct Copyright Infringement (First Claim for Relief).*** The Record Company Plaintiffs bring a claim for direct copyright infringement against Defendant. ECF No. 8 ¶¶ 69-77. A claim of direct copyright infringement requires "(1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the exclusive rights afforded

---

[4] While Plaintiffs likewise believe they have alleged sufficient facts to establish liability as to the Third Claim for Relief (by Spotify, for violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030), to facilitate entry of judgment, Plaintiffs have elected to voluntarily dismiss that claim without prejudice, as reflected in the [Proposed] Default Judgment submitted concurrently herewith.

copyright owners pursuant to the Copyright Act." *UMG Recordings, Inc. v. Escape Media Grp., Inc.*, No. 11 CIV. 8407, 2014 WL 5089743, at *19 (S.D.N.Y. Sept. 29, 2014) (citing *Twin Peaks Prods., Inc. v. Publishing Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993)); *see also* 17 U.S.C. § 106. The Record Company Plaintiffs have sufficiently alleged both elements.

First, the Record Company Plaintiffs allege that they "either own the copyrights or have exclusive U.S. rights under copyright (*e.g.*, reproduction, digital transmission, and distribution rights) in the Copyrighted Sound Recordings listed in" Exhibit A to the Complaint, and that each of those sound recordings is "registered with the U.S. Copyright Office." ECF No. 8 ¶¶ 24-25; *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001) (explaining that registration with the U.S. Copyright Office creates "a statutory presumption that the copyrights are valid"). Exhibit A to the Complaint identifies the Copyrighted Sound Recordings and their respective U.S. Copyright Registration number, and also the specific Record Company Plaintiff that owns or controls each copyright. ECF No. 8, Ex. A.

Second, the Record Company Plaintiffs have shown that Defendant copied their sound recordings and that the copying was illegal. *See UMG Recording, Inc.*, 2014 WL 5089743, at *19 ("Courts have found that the unauthorized reproduction, distribution, and public performance of sound recordings via the internet violates the Copyright Act."). The Record Company Plaintiffs allege that the Copyrighted Sound Recordings were available to stream on Spotify in the United States, that Defendant admitted that it "scrape[d]" (*i.e.*, copied) 86 million music files from Spotify, that the Copyrighted Sound Recordings appear on a list of the 10,000 most popular sound recordings that Defendant admitted it "scrape[d]" from Spotify, and that Defendant never obtained permission or consent from the Record Company Plaintiffs to copy the Copyrighted Sound Recordings. ECF No. 8 ¶¶ 1, 24-26, 58-65, 71 & Ex. D.

12

Accordingly, the Record Company Plaintiffs have alleged sufficient facts to establish Defendant's liability for direct copyright infringement.

***Defendant Is Liable for Breach of Contract (Second Claim for Relief).*** Spotify asserts a claim for breach of contract against Defendant. ECF No. 8 ¶¶ 78-83. A breach of contract claim requires "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 88 (2d Cir. 2025) (quotations omitted). Spotify has adequately alleged each element.

First, Spotify has sufficiently alleged the existence of a contract. Spotify "users are required to create an account to access content." ECF No. 8 ¶ 52. As part of that account-creation process, users must agree to Spotify's Terms and Conditions of Use, including the Terms of Use and the User Guidelines, and the Spotify Terms are valid and binding contracts between Spotify and its registered users. *Id.* ¶¶ 52-53, 80. Spotify further alleges that Defendant "accessed Spotify's platform using registered Spotify accounts, which required acceptance of Spotify's terms and conditions, including the Spotify Terms." *Id.* ¶ 79; *see also id.*, Exs. B & C. Defendant would not have been able to access Spotify without first becoming a registered user, and it would not have been able to become a registered user without first agreeing to Spotify's terms. Such allegations are sufficient to demonstrate the existence of a contract. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (finding mutual assent to platform's terms where user was informed that by creating an account, the user was agreeing to be bound by the terms).

Second, Spotify has adequately alleged a breach. Spotify's terms expressly prohibit users (like Defendant) from (a) the unauthorized "copying, reproducing, redistributing, 'ripping,' [and] transferring" of audio files from Spotify; (b) the unauthorized "importing" and "copying" of local audio files from Spotify; (c) "transferring" copies of cached content onto unauthorized devices;

13

(d) "crawling" or "scraping" Spotify; and (e) "circumventing" Spotify's technological measures. ECF No. 8 ¶¶ 52-57, Exs. B & C. Defendant breached every single one of these provisions by scraping (*i.e.*, copying) tens of millions of Spotify music and metadata files, decrypting those files by circumventing Spotify's technological measures, and then releasing millions of those audio files to the public. *Id.* ¶¶ 58-63; Landis Decl. ¶¶ 5-7; Titmuss Decl. ¶¶ 5-7.

Third, Spotify has plausibly alleged that it suffered damages as a result of Defendant's breach. Spotify is one of the most popular streaming applications in the world; it receives revenue through advertisements and paid monthly subscriptions to access its services, and pays copyright owners for licenses to reproduce and digitally transmit music on its platform. ECF No. 8 ¶¶ 46-50. Faced with Defendant's actions, Spotify was forced to investigate and remediate Defendant's unauthorized access and unlawful scraping. *Id.* ¶¶ 51, 90-92. More fundamentally, because protecting the value of content on its platform is "crucial to Spotify's business model," Defendant's misconduct damaged Spotify by interfering with its right to exploit its valuable licenses and generate revenue from the Record Company Plaintiffs' works. *Id.* ¶¶ 1, 50-51, 68, 90-92.

Accordingly, Spotify has adequately alleged Defendant's liability for breach of contract.

***Defendant Is Liable for Violation of the DMCA (Fourth Claim for Relief).*** Plaintiffs' final claim against Defendant is for violation of the DMCA, 17 U.S.C. § 1201. ECF No. 8 ¶¶ 94-100. The DMCA prohibits "circumvent[ion] [of] a technological measure that effectively controls access to" a copyrighted work. 17 U.S.C. § 1201(a)(1)(A). The statute defines circumvention as including "decrypt[ing] an encrypted work or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). Also, a technological measure "effectively controls access to a work" when, "in the ordinary course

14

of its operation, [it] requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* § 1201(a)(3)(B).

Plaintiffs have sufficiently alleged that Defendant circumvented Spotify's technological measures in violation of the DMCA. Spotify employs, among other things, DRM technology that prevents the unauthorized reproduction and sharing of its digital content. *See* ECF No. 8 ¶¶ 54, 57 61, 62, 96; Titmuss Decl. ¶ 4. Because Spotify's DRM technology is designed to prevent Spotify's music files from being reproduced, redistributed, and played outside of authorized applications, Defendant necessarily circumvented (*i.e.,* bypassed and/or decrypted) those measures in order to publicly release the music files. *See* ECF No, 8 ¶¶ 62, 97; Titmuss Decl. ¶¶ 6-7. *See, e.g., Universal City Studios, Inc. v. Reimerdes,* 111 F. Supp. 2d 294, 317-18 (S.D.N.Y. 2000) (finding a violation of the DMCA's anti-trafficking provision where the defendant's computer program circumvented software used to encrypt motion pictures on DVDs; encryption software effectively controlled access to copyrighted works, even though encryption could be decrypted or unscrambled), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001); *DISH Network, L.L.C. v. Magembe,* No. 4:23-CV-01136-P, 2024 WL 4406948, at *3 (N.D. Tex. Apr. 26, 2024) (finding that the unauthorized access and retransmission of television channels protected by DRM technology was necessarily achieved through the circumvention of that DRM technology); *Disney Enters., Inc. v. VidAngel*, Inc., 869 F.3d 848, 864 (9th Cir. 2017) (explaining that "when a defendant decrypts the [technological measures]… it is liable for [] circumvention in violation of § 1201(a)(1)(A)").

For these reasons, Plaintiffs have sufficiently alleged that Defendant violated the DMCA.

## II.    THE COURT SHOULD AWARD MAXIMUM STATUTORY DAMAGES.

Having established Defendant's liability on all claims, Plaintiffs elect to recover statutory damages for (A) the Record Company Plaintiffs' direct copyright infringement claim (first claim

15

for relief), and (B) Plaintiffs' DMCA claim (fourth claim for relief). *See* 17 U.S.C. § 504(c); 17 U.S.C. § 1203(c)(3)(A). The Court should exercise its discretion to award maximum statutory damages both to compensate Plaintiffs and to punish and deter Defendant's egregious misconduct.

### A    Maximum Statutory Damages for Copyright Infringement Are Appropriate.

The Record Company Plaintiffs have shown that Defendant's infringement was willful and is ongoing, with significant threats of future infringement. The Court should thus impose the maximum statutory damages of $150,000 per work identified in Exhibit A to the Complaint, for a total of $22,200,000. 17 U.S.C. § 504(c)(2); ECF No. 8 ¶ 24 & Ex. A; *see also* ECF No. 12 ¶¶ 4-5 & Ex. A; ECF No. 13 ¶¶ 4-5 & Ex. A; ECF No. 14 ¶¶ 4-5 & Ex. A.[5] Such an award is supported by the factors courts consider to determine a statutory damages amount: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Hudson Furniture, Inc. v. Mizrahi.*, *No.* 1:20 Civ. 04891 (PAC), 2023 WL 6214908, at *19 (S.D.N.Y. Sept. 25, 2023) (citation and quotations omitted). These factors all weigh squarely in the Record Company Plaintiffs' favor.

The first factor—Defendant's state of mind—supports maximum statutory damages. As an initial matter, the Record Company Plaintiffs have already established Defendant's default, which is sufficient to show willfulness. *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) ("Copyright infringement is deemed willful by virtue of a defendant's default.").

---

[5] Exhibit A to the Complaint identifies the registration numbers for each of the works in suit, reflecting registration of those works with the United States Copyright Office. The most recent of these registrations was obtained on July 26, 2023, long before Defendant's infringement occurred. Ransom Decl. ¶ 4. Accordingly, all of these works are eligible for an award of statutory damages. *See* 17 U.S.C. § 412.

Beyond that, willfulness "means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights." *Cengage Learning, Inc. v. Nguyen*, No. 1:20-CV-00769 (JGK), 2022 WL 18231654, at *4 (S.D.N.Y. Nov. 21, 2022), *report and recommendation adopted*, No. 20-CV-769 (JGK), 2023 WL 159739 (S.D.N.Y. Jan. 11, 2023). The Record Company Plaintiffs have shown that, too. Defendant has admitted that its shadow library business model is illegal and that it "deliberately violate[s] the copyright law in most countries." ECF No. 16, Ex. G; ECF No. 15 ¶ 8. Defendant also admits that it is intentionally "very careful" to remain anonymous and "not leave any trace," because those who operate pirate libraries (like Defendant) are "at high risk of being arrested" and "could face decades of prison time." ECF No. 16, Ex. H. Notwithstanding that it knows such conduct is illegal, Defendant "scrape[d]" and "back[ed] up" millions of music and other files from Spotify and threatened to mass-distribute those files without regard to the rights of the Record Company Plaintiffs or any other copyright holders. ECF No. 15 ¶¶ 12-15 & Ex. A. As if that were not enough, after having been served with process, the TRO Order, and the Preliminary Injunction, Defendant carried out its threat and publicly released over 2.8 million Spotify music files, including sound recordings owned by one or more of the Record Company Plaintiffs (as well as numerous sound recordings owned by their affiliates), in violation of the Court's orders. *See* ECF No. 17 at 5-6; ECF Nos. 21, 29; Landis Decl. ¶¶ 5-7. Defendant intended to infringe and its conduct was willful. *See, e.g.*, *Cengage Learning, Inc.*, 2022 WL 18231654, at *4 (finding willfulness where defendant intentionally operated infringing websites devoted to selling pirated copies of plaintiffs' works).

The second and third factors—expenses saved and profits earned by the infringer, and the revenue lost by the copyright holder—also weigh in the Record Company Plaintiffs' favor.

17

Although no discovery has been conducted because Defendant has not participated in this action, Defendant clearly "profited substantially from [its] infringing conduct" while the Record Company Plaintiffs suffered losses, including because Defendant saved significant expenses by "[bearing] none of the costs of creating any of the copyrighted works." *Cengage Learning, Inc.*, 2022 WL 18231654, at *4. Defendant profits from its illegal conduct by soliciting users to provide "donations" (which are actually paid memberships), and it rewards those users by increasing their download speeds to more quickly access infringed content. *See* ECF No. 8 ¶ 45.

With respect to the Record Company Plaintiffs' losses, the Record Company Plaintiffs' business models are dependent, in significant part, upon the licensing of their catalog of sound recordings to legitimate streaming services. ECF No. 12 ¶ 6; ECF No. 13 ¶ 6; ECF No. 14 ¶ 6 . In addition, artists rely on the Record Company Plaintiffs to control the distribution of their respective catalogs to protect the artists' rights, including to earn revenue from distribution of the Record Company Plaintiffs' works. *Id.* If consumers can instead download the Record Company Plaintiffs' catalogs of sound recordings for free and without restriction as a result of Defendant's illegal actions, consumers will have little incentive to purchase legitimate copies of the Record Company Plaintiffs' sound recordings or pay for the legitimate services on which they and their artists rely. *Id*. While the total harm caused by Defendant's illegal conduct cannot yet be determined with certainty, that fact does not weigh against the Record Company Plaintiffs in seeking statutory damages, particularly in light of Defendant's default. *See, e.g.*, *Cengage Learning, Inc.*, 2022 WL 18231654, at *4 ("No proof of actual damages or, in fact, any damages, is necessary for the award of statutory damages."); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) (awarding maximum statutory damages despite limited record of infringer's profits); *Philip Moris USA Inc. v. A & V Minimarket, Inc.*, 592 F.

18

Supp 2d 669, 674 (S.D.N.Y. 2009) (defendant's failure to respond "left the Court with no information as to any of the factors relating to the defendant's circumstances," and drawing "every reasonable inference on these points against the defendants").

The fourth factor—deterrent effect on Defendant and third parties—also favors maximum statutory damages. "[C]ourts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cengage Learning*, 2022 WL 18231654, at *5. This case involves an intentional, coordinated plan by Defendant to illegally obtain copies of copyrighted works by circumventing Spotify's technological measures designed to protect the content on its platform. *See* ECF No. 8 ¶¶ 51-68. Then, notwithstanding the Preliminary Injunction, Defendant publicly released millions of those music files, thereby continuing and expanding the scope of its infringement and exacerbating the harm it has already caused. A maximum statutory damages award for deterrent purposes is particularly appropriate under such circumstances. *See Cengage Learning*, 2022 WL 18231654, at *5 ("In the case of 'coordinated . . . and extensive copyright infringement,' a substantial statutory damage award can act as a specific deterrent to the [defendant] and a general deterrent to other like-minded infringers.") (internal quotations and citations omitted).

The fifth and sixth factors—the infringer's cooperation in providing evidence concerning the value of the infringing material and the conduct and attitude of the parties—also both support awarding the Record Company Plaintiffs maximum statutory damages. Defendant has not participated in this case at all, and certainly has not cooperated in providing evidence. A defendant's "default and subsequent silence shows a lack of cooperation in determining damages." *Id.* (quoting *Hollander Glass Tex., Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 559 (S.D.N.Y. 2018)). Defendant's failure to appear has frustrated the Record Company Plaintiffs'

19

ability to seek redress and for the Court to adjudicate the issues in this case. Moreover, Defendant's infringing conduct has continued unabated, as evidenced by its recent unauthorized release of millions of music files. Conversely, the Record Company Plaintiffs pursued their claims in good faith and have diligently prosecuted this action to protect their rights.

In sum, all six statutory factors weigh in the Record Company Plaintiffs' favor. That, taken together with clear evidence of Defendant's willfulness, fully supports a maximum statutory damages award to the Record Company Plaintiffs of $150,000 per infringed work, for a total of $22,200,000 ($150,000 x 148 infringed Record Company Plaintiffs' works). *See, e.g.*, *Cengage Learning, Inc.*, 2022 WL 18231654, at *5 (awarding maximum statutory damages of $150,000 per infringed work); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) (same); *McCurry v. Accessory Network Group, LLC*, No. 1:15-CV-09779, Dkt. Nos. 35 and 36, (S.D.N.Y. 2019) (same); *Pearson Educ., Inc. v. Najji*, No. 21-CV-3486 (RA), 2024 WL 4350467, at *7 (S.D.N.Y. Feb. 13, 2024), *report and recommendation adopted,* No. 21-CV-3486 (RA), 2024 WL 4354822 (S.D.N.Y. Sept. 30, 2024) (same).[6]

**B    Maximum Statutory Damages for Violations of the DMCA Are Appropriate.**

For violation of the DMCA, Spotify seeks the maximum statutory damages of $2,500 "per act of circumvention" of Spotify's technological measures, for a total of $300,000,000. 17 U.S.C. § 1203(c)(3)(A).[7] Section 1203(a) authorizes a civil action and recovery of statutory damages by

---

[6] This damages request is extremely conservative. As noted above, the Record Company Plaintiffs have identified an illustrative sample of 148 sound recordings from the list of 10,000 of the "most popular" sound recordings that Defendant trumpeted scraping from Spotify, ECF No. 8 ¶ 24 & Ex. A, and seek damages solely as to that small sample. The Record Company Plaintiffs anticipate that they could, if needed, identify *thousands* of sound recordings that they own or control from that list of 10,000 works alone, and orders of magnitude beyond that in the universe of the 86 million sound recordings that Defendant scraped from Spotify.

[7] The Record Company Plaintiffs—as copyright owners—also have standing to seek DMCA damages with respect to the works they own that were included in the recently-posted torrents. *See*

"[a]ny person injured" by a violation of the anti-circumvention provisions of § 1201. 17 U.S.C. § 1203(a), (c)(B). Although a showing of willfulness is not required, courts have awarded maximum statutory damages under the DMCA where the defendant's conduct was willful. *See*, *e.g.*, *Sony Computer Ent. Am., Inc. v. Filipiak,* 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005) (awarding the maximum statutory award for each of 155 acts of circumvention based, in large part, on defendant's willful violations of the DMCA); *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1262 (S.D. Fla. 2010) ("Defendants' actions were willful and necessitate an award at the maximum statutory amount").

As a threshold matter, Plaintiffs have offered ample evidence of Defendant's willful, intentional, and egregious misconduct, which makes an award of maximum statutory damages particularly just.

Spotify has also been injured by Defendant's misconduct. Courts have routinely held that the owner of the technological measures circumvented constitutes an injured person within the meaning of the DMCA. *See*, *e.g.*, *Bose BV v. Zavala*, No. CIV.A. 09-11360-GAO, 2010 WL 152072, at *2 (D. Mass. Jan. 14, 2010) (explaining that plaintiff, as "[a] party who controls the technological measures that protect copyrighted works" is "deemed a person injured by the circumvention of these measures"); *Comcast of Illinois X, LLC. v. Hightech Elecs., Inc.*, No. 03 C 3231, 2004 WL 1718522, at *6 (N.D. Ill. July 29, 2004) (cable company that controlled access to third-parties' copyrighted programming had standing to bring a DMCA anti-circumvention claim);

---

*Sheldon v. Plot Com.*, No. 15-CV-5885 (CBA), 2016 WL 5107072, at *10 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, No. 15CV5885CBACLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) ("[T]he DMCA create[s] private rights of action for 'owners' of copyright."). For purposes of this motion and the [Proposed] Default Judgment, however, the Record Company Plaintiffs have elected to seek damages solely for Defendant's infringement of the specific works identified in Exhibit A to the Complaint, ECF No. 8 ¶ 24 & Ex. A.

*RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99CV2070, 2000 WL 127311, at \*10 (W.D. Wash. Jan. 18, 2000) (plaintiff, the owner of software that protected copyrighted content, was harmed by circumvention because its customers would no longer believe that its software actually protected against unauthorized copying). Through its release of over 2.8 million music files, Defendant has also interfered with Spotify's right and ability to exploit its valuable licenses and generate revenue from the Record Company Plaintiffs' and others' works. *See* ECF No. 8 ¶¶ 1, 50-51, 68, 90-92; *see also* Titmuss Decl. ¶¶ 4, 7 (Spotify's DRM technology is intended to prevent illegal copying and distribution of works available through the Spotify platform, including to prevent distribution and playing of Spotify audio files outside of that platform).

With respect to the amount of statutory damages, as explained above, Defendant publicly posted torrents listing music files and associated metadata that Defendant had scraped from Spotify, and that Defendant had made available for download through the BitTorrent network. Landis Decl. ¶¶ 5-7; Titmuss Decl. ¶¶ 5-7. Although these torrents collectively identified 2,806,041 music files, Spotify has elected to seek statutory damages only as to the 120,000 files that Plaintiffs actually downloaded in connection with their investigation of Defendant's misconduct. *Id.* Spotify's DRM technology was used in connection with each individual audio file that Defendant scraped, and Defendant necessarily circumvented that DRM technology as to *each* of the 120,000 files that Plaintiffs downloaded (indeed, Defendant's circumvention of Spotify's DRM technology is what allowed Defendant to torrent those files, and Plaintiffs to download them from Defendant's Websites). Titmuss Decl. ¶¶ 4, 7. This conduct constituted 120,000 individual acts of circumvention. *See Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2012 WL 3306600, at \*12-13 (E.D.N.Y. June 13, 2012), *report and recommendation adopted*, No. 11 CV 726 CBA RLM, 2012 WL 3306575 (E.D.N.Y. Aug. 13,

22

2012) (collecting cases demonstrating the broad interpretation of "act of circumvention" and holding that defendant could be liable for separate acts of circumvention for each time one of defendant's employees logged into a computer that contained modified software designed to bypass the plaintiff's software and its security measures). Applying the maximum statutory damages figure as to each of those files (*i.e.*, to each act of circumvention) results in a damages award of $300,000,000 ($2500 x 120,000 downloaded released music files).[8]

## III.    THE COURT SHOULD ENTER A PERMANENT INJUNCTION.

Pursuant to Federal Rule of Civil Procedure 65(d), the All Writs Act, 28 U.S.C. § 1651, and this Court's inherent equitable powers, Plaintiffs also request that the Court permanently enjoin Defendant. *See* [Proposed] Default Judgment filed concurrently herewith.

The Court may enter an injunction because Plaintiffs have a statutory basis for relief and the prerequisites for the issuance of an injunction have been met. *Cengage Learning*, 2022 WL 18231654, at *6. Plaintiffs' claims arise under the Copyright Act and the DMCA, each of which authorizes courts to issue a final injunction. *See* 17 U.S.C. § 502(a); *id.* § 1203(b)(1); ECF No. 8 ¶¶ 77, 83, 98, Prayer for Relief (A), (C). Furthermore, as set forth below, Plaintiffs have shown irreparable injury, that remedies at law are inadequate to compensate for that injury, that the balance of hardships weighs in their favor, and that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

---

[8] This damages request is also extremely conservative. If Spotify sought maximum statutory damages under the DMCA for the entirety of Defendant's initial release of these torrents, the total damages amount would be over $7 billion ($2,500 x 2,806,041 million released music files = $7,015,102,500). The amount would be orders of magnitude higher if Defendant were to carry through on its threat (in direct violation of the Court's order) to release all of the files it claims to have stolen.

First, in copyright infringement cases, courts "routinely find the harm suffered by plaintiffs . . . to be 'irreparable' on the theory that lost sales or diminished reputation can be difficult if not impossible to measure." *Cengage Learning*, 2022 WL 18231654, at \*6. Such is the case here, as Defendant's widespread infringement materially interferes with the Record Company Plaintiffs' right to control their music catalogs and Spotify's right to exploit its valuable licenses. *See* ECF No. 8 ¶¶ 1, 48, 50-51, 58-68, 75; ECF No. 12 ¶ 7; ECF No. 13 ¶ 7; ECF No. 14 ¶ 7. Second, Defendant is an online pirate whose entire business model is premised on unlawfully copying and distributing protected works. It threatened to release all of the music files it unlawfully obtained from Spotify and has already publicly released over 2.8 million of those files for download in violation of the Preliminary Injunction. *See* ECF No. 11 ¶¶ 10-14; Landis Decl. ¶¶ 5-7; Titmuss Decl. ¶¶ 5-7. There is thus a significant threat that Defendant will engage in future infringement and further acts of circumvention, which supports that monetary damages would be inadequate. *See Cengage Learning*, 2022 WL 18231654, at \*6 ("'Courts in this Circuit have consistently found monetary damages inadequate where the defendant poses a significant threat of future infringement.'") (citations omitted). Third, the balance of hardships clearly weighs in Plaintiffs' favor. Plaintiffs face substantial hardships from Defendant's misconduct described above, while Defendant cannot be harmed by losing the ability to infringe the Record Company Plaintiffs' and others' works available on Spotify or to circumvent Spotify's technological measures. *See id.*; *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011), *aff'd,* 691 F.3d 275 (2d Cir. 2012). Fourth, and finally, the public interest would be served by issuance of a permanent injunction because the public "has a compelling interest in protecting copyright owners' marketable rights to their work." *WPIX*, 691 F.3d at 287.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Default Judgment and enter judgment in Plaintiffs' favor and against Defendant in the form of the [Proposed] Default Judgment filed concurrently herewith.

Dated:  March 25, 2026                               Respectfully submitted,


                                                     /s/ Rollin A. Ransom
                                                     Rollin A. Ransom (*Pro Hac Vice*)
                                                     Lauren M. De Lilly (*Pro Hac Vice*)
                                                     SIDLEY AUSTIN LLP
                                                     350 South Grand Street
                                                     Los Angeles, CA 90071
                                                     Telephone: (213) 896-6000
                                                     Facsimile: (213) 896-6600
                                                     Email: rransom@sidley.com
                                                     Email: ldelilly@sidley.com

                                                     Randi W. Singer (SBN 2946671)
                                                     SIDLEY AUSTIN LLP
                                                     787 Seventh Avenue
                                                     New York, New York 10019
                                                     Telephone: (212) 839-5300
                                                     Facsimile: (212) 839-5599
                                                     Email: randi.singer@sidley.com

                                                     *Attorneys for Plaintiffs*

25

## <u>L.R. 7.1(C) CERTIFICATE OF COMPLIANCE</u>

I, Rollin A. Ransom, hereby certify that according to the word count of the word-processing program used to prepare the foregoing document, and exclusive of the portions of it that are excluded by Local Rule 7.1, there are 7958 words in the document.

 */s/ Rollin A. Ransom*
Rollin A. Ransom

*[Signature page to Certificate of Compliance]*