**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION; ATLANTIC MUSIC GROUP LLC; BAD BOY RECORDS LLC; ELEKTRA ENTERTAINMENT LLC; ELEKTRA ENTERTAINMENT GROUP INC.; FUELED BY RAMEN LLC; WARNER MUSIC INTERNATIONAL SERVICES LIMITED; WARNER RECORDS INC.; WARNER RECORDS LLC; SONY MUSIC ENTERTAINMENT; ARISTA MUSIC; ARISTA RECORDS, LLC; ZOMBA RECORDING LLC; UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; and SPOTIFY USA INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANNA'S ARCHIVE and DOES 1-10, <br><br> Defendants. | No. 26-cv-00002 (JSR) <br><br> **DECLARATION OF JEREMY LANDIS IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

I, Jeremy Landis, declare and state, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.9 of the United States District Courts for the Southern and Eastern Districts of New York, that the following is true and correct:

1.      I am Senior Vice President, Technology at the Recording Industry Association of America ("RIAA"). I make this declaration in support of the Motion for Default Judgment of Plaintiffs Atlantic Recording Corporation, Atlantic Music Group LLC, Bad Boy Records LLC, Elektra Entertainment Group Inc., Elektra Entertainment LLC, Fueled by Ramen LLC, Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, Sony Music Entertainment, Arista Music, Arista Records, LLC, Zomba Recording LLC, UMG Recordings,

Inc., and Capitol Records, LLC (collectively, the "Record Company Plaintiffs"), and Spotify USA

Inc. ("Spotify," and together with the Record Company Plaintiffs, "Plaintiffs"). I have personal

knowledge of the following facts, and if called as a witness, could and would testify thereto.

2.      The RIAA is a nonprofit trade organization that supports and promotes the creative

and financial vitality of recorded music and the people and companies that create it in the United

States. RIAA members create, manufacture, and/or distribute sound recordings representing the

majority of all legitimate recorded music consumption in the United States, and own copyrights

and/or other exclusive U.S. rights in sound recordings embodying the performances of some of the

most popular and successful recording artists of all time.

3.      I have worked at the RIAA since 2004.  Since that time, I have worked exclusively

in the content protection department (formerly called the antipiracy department), which is focused

on protecting the copyrights of RIAA's member companies from infringement online. My current

responsibilities for RIAA include managing many of RIAA's antipiracy initiatives, which include

monitoring online sources of infringement, documenting that infringement, and developing and

managing databases to track infringements.

4.      By virtue of my position and role at RIAA, I have access to information and am

knowledgeable about the sound recording catalogs owned and controlled by the Record Company

Plaintiffs and their affiliates and their copyright interests in those sound recordings.

5.      On or around February 9, 2026, I visited the website of Defendant Anna's Archive

("Defendants") then maintained at annas-archive.li and viewed the "Torrents" webpage located at

annas-archive.li/torrents.[1] The "Torrents" webpage included links to 47 separate torrents

---

[1] I understand that the annas-archive.li domain name is no longer active, although an identical version of the Anna's Archive website continues to be accessible through one or more other domain names.

purporting to identify Spotify music files that Defendant had made available for download through the BitTorrent network. Based on my review of the links, each Spotify torrent appeared to identify 60,000 music files available for download, with the exception of the last torrent, which appeared to identify 46,421 music files. In total, the Spotify torrents appeared to identify 2,806,421 music files ((46 torrents x 60,000 music files) + (1 torrent x 46,421 music files)) that Defendant had made available for download through the BitTorrent network.

6.　　　I opened the first two torrents listed by Defendant and downloaded the files identified in the torrents. As noted above, each of these torrents identified 60,000 music files (for a total of 120,000 music files), and I was able to successfully download all 120,000 music files to my computer.　Each file also included the Spotify metadata associated with the sound recording, including artist, title, album name, track name, label, and other information.

7.　　　I reviewed the metadata for a sample of the music files I downloaded, each of which consisted of a single sound recording. The metadata reflected that these sound recordings include one or more sound recordings I understand to be owned by one or more of the Record Company Plaintiffs (identified as such by name in the metadata), as well as multiple sound recordings I understand to be owned by their affiliates. I also cross-referenced the metadata for those sound recordings against information provided to RIAA by the Record Company Plaintiffs. These records confirmed information reflected in the Spotify metadata as to many of the sound recordings that I downloaded, including that one or more of the Record Company Plaintiffs owns or controls the copyright or exclusive rights under copyright in one or more of the sound recordings that Defendant made available for download.

8.    On or around February 11, 2026, I visited Defendant's website and the links to the Spotify torrents had been removed from the active version of the website.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 25, 2026, in *Monkton, MD* .

*Jeremy Landis*

Jeremy Landis

4